IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARION BOCK                                                                                    PLAINTIFF

V.                                              NO. 10-5167

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Marion Bock, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on July 18, 2007, alleging an inability to work since June 22, 2007, due to right knee pain and limited range of motion, mid-back pain, right hand to elbow numbness, sharp pains, poor memory, limited

reading and writing, learning disability, and headaches. (Tr. 104). An administrative hearing was held on May 4, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 286-305).

By written decision dated June 2, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - Mental Retardation. (Tr. 13). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairment did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: Claimant has moderate restrictions in maintaining social functioning and in concentration, persistence, and pace. He is moderately limited in the ability to understand, remember, and carry out detailed instructions, appropriately respond to usual work situations and routine work changes, and appropriately interact with supervisor and co-workers. Moderately limited means there is more than a slight limitation but generally the person performs in a satisfactory manner. Claimant can perform work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote with few variables and little judgment. Supervision is simple, direct, and concrete.

(Tr. 14). With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform other work as an industrial cleaner, automobile detailer, or kitchen helper/dishwasher. (Tr. 18).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 10, 2010. (Tr. 3-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 7, 8).

**II.     Evidence Presented:**

Plaintiff was born in 1983 and completed Grade 12 in school, attending special education

classes. (Tr. 100, 109, 181). The record contains documents from Springdale Public Schools which indicate that when Plaintiff was ten years old, certain psychological and educational assessments were performed on him. (Tr. 167-170). It was determined at that time that Plaintiff was functioning in the intellectually deficient range of intelligence, in verbal reasoning skills and in visual-motor reasoning skills. (Tr. 168). It was reported that Plaintiff's intellectual ability was approximately two or more standard deviations below the mean for his age. (Tr. 169).

The medical records reveal that on July 25, 2005, an Intellectual Assessment and Evaluation of Adaptive Functioning was completed by Scott McCarty, Ph.D., of the Center for Stress Reduction. (Tr. 171-173). Dr. McCarty noted that Plaintiff drove to the evaluation site accompanied by his mother, and that Plaintiff exhibited impaired grooming and hygiene. (Tr. 181). Plaintiff reported health problems with his back and knee pain. (Tr. 181). At that time, Plaintiff was taking Flexeril, Naproxen, Amoxicillin, and Cephalexin. (Tr. 181). Dr. McCarty reported that based upon the WAIS-III test, Plaintiff had extremely low range of intelligence. (Tr. 181). His IQ scores were as follows: VIQ - 66; PIQ - 69; and FSIQ - 64. (Tr. 181). Plaintiff reported to Dr. McCarty that he got along "okay" with others, that he did "pretty good" academically, and got along "all right" with co-workers. (Tr. 172). Plaintiff reported that he continued to enjoy spending time with his friends and family. Plaintiff also denied having problems with activities of daily living, although he admitted that he did not know how to cook anything other than ramen noodles. (Tr. 172). Dr. McCarty observed Plaintiff's self-care skills to be impaired, and that Plaintiff stated that he could not drive without supervision because he had not been able to pass his driver's test. (Tr. 172). Dr. McCarty noted that Plaintiff exhibited adequate concentration and excellent persistence, but slow pace, and found that Plaintiff

qualified for a diagnosis of Mild Mental Retardation, based on his Full Scale IQ of 64, and "limitations in at least two areas of adaptive functioning." (Tr. 173).

On February 7, 2006, Plaintiff presented himself to the Washington Regional Medical Center Emergency Room, for evaluation of bilateral, lower back pain. (Tr. 216). At that time, Plaintiff worked delivering furniture, and had delivered several loads that day. The hospital record indicated that the pain in his back appeared to be paraspinal. (Tr. 216). Plaintiff took some Ibuprofen and Tylenol, without significant help. Plaintiff was diagnosed with low back strain due to lifting furniture at work. (Tr. 217).

On July 20, 2006, Plaintiff presented himself to the Washington Regional Medical Center Emergency Room after being involved in an ATV accident. (Tr. 264). He was unhelmeted and a single occupant driver, traveling at a high speed on a county road and reportedly hit a culvert, was ejected and thrown into a stop sign, striking his head. After appearing at the emergency room, Plaintiff decided to leave and did not want to be treated. (Tr. 264). On July 21, 2006, Plaintiff saw Dr. Laura Hardin at Farmington Family Clinic, and she recommended to him that he return to the emergency room and stay for evaluation and treatment. (Tr. 273). On July 24, 2006, Plaintiff went back to the emergency room and the clinical impression was "contusion, back, left hip, right knee." (Tr. 176).

On September 24, 2007, Plaintiff presented himself to Washington Regional Medical Center, complaining of chest and abdominal pain, headache and nausea. (Tr. 194-194). Plaintiff reported that he was there for a work note so that he would not get into trouble at work. (Tr.

AO72A
(Rev. 8/82)

195). Plaintiff was diagnosed with headache and costochondritis[1] and work note requirement. (Tr. 197).

On November 27, 2007, Dr. K. Marcus Poemoceah conducted a General Physical Examination of Plaintiff, at the request of the Social Security Administration. (Tr. 226-232). At that time, the only medications Plaintiff was taking were Aleve and Motrin. (Tr. 226). An examination of his spine and extremities revealed normal range of motion. Dr. Poemoceah found that Plaintiff's reflexes of his biceps, triceps, patellar, and achilles all symmetrically diminished, but Plaintiff was able to perform all limb functions. (Tr. 230). An x-ray of Plaintiff's right hand showed no significant degenerative changes. An x-ray of Plaintiff's right knee showed good joint space, and no arthritic changes were seen. A T-spine x-ray was basically unremarkable. (Tr. 231). Dr. Peomoceah diagnosed Plaintiff with:

1. Joint pains
2. S/P motor vehicle accident
3. Laceration to the knee. Good preservation of strength
4. History of learning disorders

(Tr. 232). Dr. Peomoceah also did not note any limitations in Plaintiff's ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak. (Tr. 232).

On December 10, 2007, at the request of the Social Security Administration, a Mental Diagnostic Evaluation was conducted by Terry L. Efird, Ph.D. (Tr. 235-239). Plaintiff told Dr. Efird that he took over-the-counter medication for his pain, which was "reportedly effective most of the time. Obstacles to treatment were denied." (Tr. 236). Plaintiff also reported the ability

---

[1]Costochondritis - Inflammation of one or more costal cartilages, characterized by local tenderness and pain of the anterior chest wall that may radiate, but without the local swelling typical of Tietze syndrome. Stedman's Medical Dictionary 450 (28th ed. 2006).

to perform most activities of daily living satisfactorily, and relationships with his co-workers and supervisors were described as being "alright." (Tr. 236). Dr. Efird noted that Plaintiff's mood was euthymic. (Tr. 236). In response to the question of whether Plaintiff appeared to be functioning within or near the mentally retarded range, Dr. Efird marked "No." (Tr. 237). He further opined as follows:

> Report from 2005 was contained in the records review which found FSIQ of 64. However, claimant appears to be functioning within a borderline range, in my opinion. This opinion is based upon his having been working full-time; and driving since that evaluation. However, if deemed necessary, a measure of adaptive behavior may be helpful to obtain a type of psychometric level of functioning. Claimant denied outstanding mental/emotional difficulties at this time. However, it is possible that this claimant could be a poor reporter of information; and, I am unable to provide more clarity at this time. Therefore, all diagnoses will be deferred at this time.

(Tr. 238). Dr. Efird gave Plaintiff a GAF score of 55-65. (Tr. 238). He further found that the ability to perform most activities of daily living autonomously was reported, and that Plaintiff appeared to have the capacity to perform basic cognitive tasks. (Tr. 238). However, he also found that Plaintiff would most likely have difficulty with more complex cognitive tasks. (Tr. 238). Dr. Efird also found that Plaintiff generally completed most tasks within an average to below average time frame, and that the speed of performance decreased as the task complexity increased. (Tr. 239).

On December 17, 2007, a Case Analysis was prepared by Alice M. Davidson. (Tr. 242). Dr. Davidson found that Plaintiff's physical impairments were non-severe. (Tr. 242). A Mental RFC Assessment was completed on January 11, 2008, by Jerry R. Henderson. (Tr. 243-246). Dr. Henderson found that Plaintiff was not significantly limited in eleven out of twenty categories; was moderately limited in nine out of twenty categories; and that Plaintiff was able

to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of the tasks was learned and perfomed by rote, with few variables, and little judgment; and where supervision required was simple, direct and concrete. "Unskilled." (Tr. 245). In a Psychiatric Review Technique form also dated January 11, 2008, Dr. Henderson found that Plaintiff had a mild degree of limitation in restriction of activities of daily living; a moderate degree of limitation in difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, and had no episodes of decompensation, each of extended duration. (Tr. 257). Dr. Henderson concluded, after reviewing the medical records, that Plaintiff had the capacity to do unskilled work. (Tr. 259).

In a May 12, 2008 Disability Report-Appeal, Plaintiff reported that he was in a car accident on April 8, 2008, when his back popped out of place when he hit the steering wheel. (Tr. 140). Plaintiff reported that he was seeing a chiropractor for the pain in his back and was taking Advil and Ibuprofen. He reported that he could not afford to return to a doctor for any further exams, and that he was trying to get into the free clinics, but that all of them in this area were full and not seeing new patients at that time. (Tr. 143).

In a September 6, 2007 Disability - Pain and Other Symptoms report, Plaintiff reported that he had sharp pains in his knee and back, headaches, and pain in his right hand to elbow. (Tr. 81). He further indicated that he had pain every day, when walking, sitting, and standing. He was not taking any medications other than over-the-counter medications. (Tr. 82). In a September 8, 2007 Function Report - Adult - Plaintiff indicated that he got up at eight a.m., went to the bathroom and showered, went to work for awhile for one to two hours if his knee was not bothering him, ate something, came home and watched television and ate with his wife. (Tr. 83).

He reported that sometimes he sat with his Aunt Bonnie at her home because she has Alzheimer's disease. (Tr. 84). He reported that he took out the trash, went outside once a day, walked, drove a car, rode a bicycle, shopped for groceries, and visited family and friends once a week. (Tr. 85). He reported that he got along "alright" with authority figures, and did not handle changes in routine "too good." (Tr. 89). He reported that he limped sometimes, got headaches, his arms got numb, and that sometimes he could not bend his knee. (Tr. 90).

In a September 28, 2007 Disability Report - Adult, Plaintiff reported that the conditions that limited his ability to work were right knee pain and limited range of motion, mid-back pain, right hand to elbow numbness, sharp pains, poor memory, limited reading and writing, learning disability, and headaches. (Tr. 104). He also reported that he was often "very down" due to his constant pain. (Tr. 104).

In a November 9, 2007 Function Report - Adult, Plaintiff stated that he did not get along with family, friends or neighbors or authority figures, and followed written and spoken instructions "okay."

In an undated Disability Report - Appeal, Plaintiff reported that his headaches were more severe and there was more pain in his back and legs. (Tr. 129). However, the only medications Plaintiff reported taking were Aleve and Tylenol or Ibuprofen. (Tr. 131). He also reported that he could not hold or pick up a glass with his right hand. (Tr. 133). It is noteworthy that Plaintiff is left-handed. (Tr. 88).

At the 2009 hearing, Plaintiff stated that he had been having problems with his knee ever

since his accident on an ATV in 2007,[2] and that he could not stand or walk for very long before he experienced pain. (Tr. 292). He also said he had headaches since the accident. He testified that Ibuprofen helped. He denied having a problem feeling depressed, and stated that he could do the outside chores "ok." (Tr. 300).

### III. Applicable Law:

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massananari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantially gainful activity. Pearsall v.

---

[2] At the hearing, Plaintiff testified that he injured his knee in a three wheeler accident in 2007. However, the records reflect that the ATV accident occurred on July 20, 2006. (Tr. 264).

Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for longer than at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listing; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.3d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV.   Discussion**

**A. Impairments:**

The ALJ acknowledged that Plaintiff noted several alleged impairments, most of which appeared to stem primarily from an ATV accident that occurred in July of 2006. However, the ALJ found the only severe impairment to be mild mental retardation. The ALJ discussed the evaluations of Dr. McCarty and Dr. Efird, and found that the records in general and testimony of Plaintiff clearly demonstrated that Plaintiff experienced limitations from his mental disabilities, and acknowledged that Plaintiff most likely suffered from mild mental retardation. However, the ALJ found that the requirements of section 12.05 were not met in view of the

number of tasks in which Plaintiff was able to engage. (Tr. 16). Listing 12.05 provides:

> *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A.  Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded:
> OR
> B.  A valid verbal, performance, or full scale IQ of 59 or less:
> OR
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function;
> OR
> D.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1.  Marked restriction of activities of daily living; or
> 2.  Marked difficulties in maintaining social functioning; or
> 3.  Marked difficulties in maintaining concentration, persistence, or pace; or
> 4.  Repeated episodes of decompensation, each of extended duration.

The ALJ found that Plaintiff did not meet or equal the criteria in 12.05, due in large part to his abilities as found in the record. The ALJ pointed out, and the record confirms, that despite any mental impairment, Plaintiff performed various work tasks over the years, delivering furniture, handling house insulation, and maintenance and line work at a production facility, one of which he held for at least six months. Plaintiff is a high school graduate and graduated with a "C" average, although he attended special education classes throughout his schooling. He did not have to repeat any classes. As the ALJ further pointed out, Plaintiff finally obtained his driver's license and does drive, and also performs a number of chores around the house. Plaintiff reported last working in December, 2006, in facilities maintenance at the University of Arkansas.

AO72A
(Rev. 8/82)

"He had been on this job for almost one year. A report of having been off work too long after the MVA; and, 'they let me go.'" (Tr. 236). Based upon these activities, the ALJ agreed with Dr. Henderson's Mental RFC Assessment, indicating that Plaintiff was only moderately limited in nine out of twenty categories.

Regarding Plaintiff's physical allegations, the ALJ found that Plaintiff was no more than minimally physically restricted. The ALJ considered Plaintiff's daily activities, as well as the fact that Plaintiff was only taking over-the-counter medication, to conclude that Plaintiff did not suffer from a severe physical impairment.

The Court believes there is substantial evidence to support the ALJ's finding that Plaintiff's only severe impairment is mental retardation, but that Plaintiff is able to perform work-related activities, within the confines of the functional limitations set out in the ALJ's RFC findings.

**B. Subjective Complaints and Credibility Analysis:**

When assessing Plaintiff's subjective complaints, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards

(Rev. 8/82)

v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (Tr. 15).

Plaintiff's daily activities were set forth in detail above. In addition, the fact that Plaintiff mainly took over-the-counter medications for his pain indicates that Plaintiff's pain is not disabling. See Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987)(the fact that the measures Plaintiff undertook to relieve her pain, hot showers and doses of Advil and aspirin, did not indicate that her pain was so severe as to be disabling). In a May 2008 Disability Report - Appeal, Plaintiff's counsel indicated that Plaintiff could not afford any further exams, and "is also trying to get into the free clinics, but all of them in this area are full and not seeing new patients at this time." However, merely stating that he attempted to schedule such an appointment in 2008 does not persuade the Court at this time, since Plaintiff has allegedly suffered from the pain at least since his ATV accident in July of 2006. Furthermore, there is no evidence that Plaintiff was denied treatment because of his financial condition.

The Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.     RFC Assessment:

The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations. RFC is the most a person can do despite

AO72A
(Rev. 8/82)

that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In Dr. Poemeoceah's General Physical Examination, he reported that Plaintiff had normal range of motion in his spine and extremities. He reported that an x-ray of his right knee showed good joint space, with no arthritic changes seen. He listed no limitations in Plaintiff's ability to walk, stand, sit, lift, carry, handle finger, see, hear or speak. Furthermore, Plaintiff only took over-the-counter medications.

With respect to Plaintiff's mental impairments, as noted by the ALJ and addressed previously in this opinion, in 2005 and 2006, Plaintiff worked delivering furniture, for a house insulation company, and did maintenance and line work at George's. Furthermore, Plaintiff has demonstrated an ability to function appropriately despite allegations relating to his mental capacity. He graduated from high school with a "C" average, has a driver's license, and performs various chores around the house. The ALJ's RFC findings include nonexertional

-14-

limitations, which take into consideration Plaintiff's mental limitations.

The Court believes that substantial evidence supports the ALJ's finding that Plaintiff is able to perform work-related activities, within the confines of the functional limitations set out in the ALJ's RFC findings.

### D. Hypothetical Proposed to Vocational Expert:

In his first written hypothetical question to the VE, the ALJ asked the VE as follows:

> Please assume a hypothetical person (younger individual), with high school education and the same work history as the claimant. This person has moderate restrictions in maintaining social functioning and in concentration, persistence, and pace. He is moderately limited in the ability to understand, remember, and carry out detailed instructions, appropriately respond to usual work situations and routine work changes, and appropriately interact with supervisors and co-workers. Moderately limited means there is more than a slight limitation but generally the person performs in a satisfactory manner. This person can perform work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote with few variables and little judgment. Supervision is simple, direct, and concrete.

(Tr. 161). The ALJ asked the VE if there were any jobs Plaintiff would be able to perform, given the facts in the first hypothetical, to which the VE wrote in response that the jobs of kitchen helper/dishwasher; cleaner, industrial; and automobile detailer would be available. (Tr. 162). The ALJ asked Plaintiff's counsel if she had any questions of the VE or wanted to include additional hypotheticals, to which Plaintiff's counsel responded "No, sir. I don't." (Tr. 203).

The Court finds that the hypothetical the ALJ proposed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing other work as a kitchen helper/dishwasher,

cleaner, industrial, and automobile detailer. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and affirms the ALJ's decision. Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this 6th day of September, 2011

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE